IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ALAN WEEKS,

                                Plaintiff,

        v.                                                      OPINION and ORDER

FRANK BISIGNANO,[1]                                              24-cv-559-jdp
Commissioner of the Social Security Administration,

                                Defendant.

Plaintiff Alan Weeks seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Weeks was not disabled within the meaning of the Social Security Act. Weeks asserts multiple objections to administrative law judge (ALJ) Guila Parker's decision, including her residual functional capacity (RFC) assessment, her handling of Weeks's subjective symptoms, and her evaluation of the medical opinions. The court concludes that a remand is required because the ALJ did not adequately explain multiple aspects of her decision.

BACKGROUND

Weeks is a former truck driver. His impairments arise from a May 21, 2018, workplace accident, when the handle of the rolling door on the back of his truck struck him on the left side of his head, causing a concussion. R. 1365.[2] Weeks alleges disability beginning on the date

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 6.

of the workplace accident. R. 87. His disability claim was denied at the initial level and on reconsideration, so Weeks requested a hearing before an ALJ. R. 132.

In a 27-page opinion, the ALJ found that Weeks suffered from the following severe impairments: neurocognitive disorder with post-concussive syndrome, migraines/headaches with altered cognitive function, and obesity. The ALJ found that Weeks retained the RFC to perform sedentary work with the following additional restrictions:

- He cannot climb ladders, ropes, or scaffolds.

- He cannot work at unprotected heights or operate dangerous moving machinery.

- He can occasionally climb ramps or stairs, balance on uneven terrain, stoop, kneel, crouch, or crawl.

- He can work in an environment with noise intensity at no more than a moderate level and light intensity at no more than a typical office level.

- He can understand and remember simple instructions, carry out simple tasks for two-hour intervals with customary scheduled breaks, and tolerate occasional changes in work setting.

R. 28.

Relying on the testimony of a vocational expert, the ALJ found that Weeks could not perform any of his past relevant work, but that he was not disabled because he could perform jobs that exist in significant numbers in the national economy, including a telephone order clerk (23,000 jobs); document preparer (32,000 jobs), and final assembler (35,000 jobs). R. 47.

Weeks now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). But the ALJ's decision must

identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Weeks raises multiple objections to the ALJ's decision. His main contention is that that the ALJ failed to adequately account for all his limitations when she determined his RFC. He also challenges the ALJ's handling of his subjective symptoms and her evaluation of the medical opinion of examining physician Larry Studt.

## A.  RFC determination

Weeks asserts that the ALJ's RFC determination failed to adequately account for his noise and light sensitivity and his limitations in concentration, persistence, and pace. A claimant's RFC represents the work-related activities that the claimant can still do despite his limitations. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citing SSR 96-8p). In determining the RFC, the ALJ must account for all limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). An ALJ need not discuss every piece of medical evidence she considered in determining the RFC, but she must say enough in her analysis "to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). The court concludes that the ALJ adequately explain her reasoning with regard to Weeks's noise and light sensitivity, but she failed to articulate her reasons for the restrictions she assessed for Weeks's limitations in concentration, persistence, and pace.

### 1. Noise and light sensitivity

The ALJ acknowledged in her opinion that Weeks suffers from noise and light sensitivity as a consequence of his post-concussion syndrome and migraine headaches. Accordingly, the ALJ limited him to work environments with no more than moderate noise and no more than office-level light. Weeks says that he is incapable of working in an environment with even that level of noise and light.

As for noise sensitivity, Weeks contends that the ALJ improperly translated the state-agency doctors' opinions that he should avoid "concentrated exposure" to noise, saying that that implies a durational limit on noise exposure, not just a volume limit. But viewed in context, it's clear that the ALJ's reading of state-agency doctors' opinions is the better one. The state-agency doctors wrote: "Claimant's "black out" episodes are noted to increase with loud noises so he should avoid concentrated exposure to loud noises." R. 96, 109. The state-agency doctors said that Weeks experienced symptoms when exposed to loud noises, so it was reasonable for the ALJ to translate that opinion into an RFC restriction limiting him to moderate-noise environments. *Recha v. Saul*, 843 F. App'x 1,4 (7th Cir. 2021) ("case law has clarified that an ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations").

Weeks also points to medical records that he says demonstrate an inability to function in even moderate noise. He notes that during neurological testing, he became distracted by the sounds of voice therapy coming from a nearby room, which sounded to him like a "trumpet." R. 1203. He turned down the TV and limited noise in his home, and he wore earplugs in public. R. 579. He reported sensitivity to certain sounds, including clock ticking, clapping, and bell ringing. R. 530. But as the ALJ observed, Weeks's reported degree of noise sensitivity is

inconsistent with his being able to attend his children's sporting events, including baseball, volleyball, and hockey. Weeks points to his testimony that he often became overstimulated at these events and had to leave early. R. 71–72. But that doesn't defeat the ALJ's conclusion that he could handle some degree of noise. The ALJ also observed that Weeks was able to go out in public—Weeks said that he often wore earplugs while out, but he doesn't say why he couldn't do the same at work. The ALJ was entitled to consider this evidence in determining that Weeks could function in a moderate noise environment. *See Mueller v. O'Malley*, No. 23-cv-0076-jdp, 2024 WL 4262766, at *3 (W.D. Wis. Sept. 23, 2024) (ALJ is entitled to consider a claimant's daily activities, even if they are restricted).

Weeks's arguments about his light sensitivity are similar. He says that he cannot handle even office-level light, and he points to evidence that he wore tinted glasses, would need to sit in a dark room on bad days, and once sat in a medical office wearing sunglasses and a brimmed hat. But Weeks doesn't explain why the need to wear tinted glasses would be work preclusive, nor why isolated incidents of more severe light sensitivity would require more severe functional restrictions. Weeks has not shown that the ALJ ignored "an entire line of evidence" contrary to his ruling on Weeks's light sensitivity, *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009), so the court concludes that the ALJ did not err in her consideration of that issue.

### 2. Concentration, persistence, and pace

The ALJ acknowledged that Weeks had moderate limitations in concentration, persistence, and pace as a result of his neurocognitive disorder, headaches, and fatigue. R. 27. To address these limitations, she limited Weeks to unskilled work involving simple instructions, and to working in "two-hour intervals over an eight-hour day with customary breaks." R. 28. Weeks contends that these restrictions are inadequate for two reasons. First, he

says that the ALJ should have included a one- to two-step task restriction instead of a simple task restriction, because that's what the state-agency doctors suggested, and the ALJ found their opinions persuasive. Second, he says that the restriction allowing him to work on "simple tasks for two-hour intervals over an eight-hour day with customary scheduled breaks" doesn't adequately account for his extremely slow pace of work. The court agrees on both counts.

As for the one- to two-step task restriction, the commissioner doesn't defend that issue on the merits, so he has forfeited any contention that RFC was adequate in that respect. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007). Instead, the commissioner relies on a harmless error argument; he asserts that including a simple task restriction instead of a one- to two-task restriction didn't make a difference, because the final assembler job that the vocational expert identified would have been available to Weeks even if he had a one- to two-step task restriction. The commissioner is correct that an RFC error can be harmless if a significant number of jobs exist in the national economy after correcting for the error. *See Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016). But as the court will explain next, the RFC is also inadequate with respect to the restriction that Weeks could perform simple tasks for "two-hour intervals over an eight-hour day with customary breaks." That eliminates the final assembler job, so the court cannot affirm on the basis of harmless error.

To support his contention that the "simple tasks for two-hour intervals" restriction was inadequate, Weeks relies on Seventh Circuit precedent holding that a restriction to "simple tasks" does not necessarily account for difficulties maintaining an adequate pace throughout the workday. *Lothridge*, 984 F.3d at 1233; *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018). Weeks argues that the record is replete with evidence that he cannot maintain pace for two-hour periods over an eight-hour workday, regardless of the simplicity of the tasks. He says

that the ALJ should have included additional restrictions for his "brain fog" and slow processing speed.

The record paints an inconsistent picture about Weeks's ability to concentrate and maintain pace in two-hour intervals over an eight-hour day. Weeks testified at the administrative hearing that since his work accident, he has experienced "brain fog," extreme fatigue, and difficulties with memory. He said that he is able to drive, but only locally because of "brain fatigue and getting tired." R. 69. He takes a daily nap in the afternoon because otherwise, "brain fog and fatigue kicks in and all my symptoms tend to get worse." R. 75–76. Weeks reported to his doctor that if he becomes overstimulated, he "blanks out" for up to several hours and can't remember what happened. R. 402, 489, 579.

Several doctors concluded that Weeks's brain fog, fatigue, and slow processing speed were psychological in origin as opposed to physical consequences of his concussion. Susanne Cohen, a neuropsychologist who evaluated Weeks in November 2018, observed that his work injury was "at most . . . a mild traumatic brain injury" and that his symptoms were "entirely incompatible with organic dysfunction associated with a single concussion more than 6 months ago. Findings are more suggestive of the possibility of a catastrophic psychological reaction." R. 581. Cohen observed that Weeks was "extremely slow at completing any testing administered to him, with the exception of completion of a computer administered psychological test comprised of 338 items. This was self-paced and completed in about the typical amount of time." R. 580. Cohen said that Weeks's test results "were close to chance levels on performance validity testing," so they were "not believed to be a valid estimate of his true cognitive abilities at this time." Cohen did not believe that Weeks was intentionally malingering (although she could not entirely rule that out); instead, she diagnosed him with

somatic symptom disorder, a condition in which a patient experiences physical symptoms as a result of a psychological condition rather than a physical one. R. 581; *cf. Madden v. Kijakazi*, No. 20-cv-1091-bbc, 2022 WL 611548, at \*4–\*6 (W.D. Wis. Mar. 2, 2022) (remanding based on ALJ's failure to adequately account for claimant's somatic symptom disorder).

Weeks demonstrated similar results on repeat neuropsychological testing in July 2019. Psychologist Jerry Halsten observed severe deficits in Weeks's ability to complete tasks. R. 1202–07. Weeks scored within the moderately to severely impaired range on all tests, he required repeated encouragement to continue with testing, and his "speed of responding to testing tasks was extremely slow." R. 1203. Halsten discontinued testing after three-and-a-half hours because Weeks reported extreme fatigue. Like Cohen, Halsten observed that Weeks's performance validity scores were very low, and he concluded that the testing likely underestimated his true cognitive abilities. R. 1205. But Halsten did not conclude that Weeks was intentionally malingering; instead, he said that Weeks's functional limitations were attributable to "heightened physiological arousal and anxiety, which has resulted in avoidant behavior." R. 1206.

Other specialists agreed with the psychologists that Weeks was experiencing a psychological response to his concussion as opposed to a physical one. In 2018 and 2023, neurologists examined Weeks to determine whether his reported symptom of "blanking out" in response to loud noises or bright lights was the result of a neurological condition. Testing showed no disrupted brain rhythms, ruling out an epileptic event. R. 583–84, 587, 1814. Weeks was diagnosed with conversion disorder with pseudogenic seizures, a mental health condition that manifests in the form of physical neurological symptoms. R. 1814. Weeks also saw a rehabilitation doctor and underwent physical and occupational therapy. In 2019, the

rehabilitation doctor concluded that additional therapies "would not be beneficial until the . . . neurobehavioral and psychological issues resolve or significantly improve." R. 1190.

The above evidence is subject to competing interpretations, and the ALJ could reasonably have decided that the evidence did not justify any additional RFC limitations. Social security regulations require a claimant to show that his symptoms are caused by a medically determinable impairment. 20 C.F.R. § 404.1521. Weeks's low scores on symptom validity tests, and Cohen's comment that she was unable to rule out intentional malingering, could have led the ALJ to conclude that Weeks's symptoms were not attributable to a medically determinable impairment. The ALJ could also have discounted the severity of Weeks's cognitive symptoms based on the psychologists' view that the testing underrepresented Weeks's true cognitive abilities.

Nevertheless, the potentially strong reasons for discounting Weeks's evidence of cognitive disfunction do not save the ALJ's decision here, because the ALJ did not rely on those reasons in the decision. "[A]n ALJ must articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Here, the ALJ appeared to credit that Weeks's brain fog, fatigue, and slow pace were attributable to his post-concussion neurocognitive disorder. In her discussion of Weeks's RFC, she wrote: "Regarding the claimant's mental impairments associated with memory problems, concentration problems, and brain fatigue, they appear mostly attributable to his neurocognitive disorder resulting from a traumatic brain injury and post-concussive syndrome." R. 41. But the ALJ did not say why she did not credit Weeks's testimony or the other evidence about the severity of those impairments. Her decision is 27 pages long, but it

consists almost entirely of a summary of the medical evidence, which as this court has repeatedly told the commissioner, "isn't a substitute for analysis." *Phillips v. Bisignano*, No. 23-cv-341-jdp, 2025 WL 1453265, at *2 (W.D. Wis. May 21, 2025) *Plemon v. Kijakazi*, No. 21-cv-148-jdp, 2022 WL 842914, at *3 (W.D. Wis. Mar. 22, 2022). Even reading the ALJ's opinion as a whole, as the court is required to do, *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004), the ALJ did not "explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

In the few sections of the decision in which the ALJ does analyze Weeks's cognitive functioning, the analysis is unclear and inconsistent. First, in her discussion of the Paragraph B criteria, the ALJ wrote:

> With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant testified that he has trouble with concentration but is able to play video games, watch television shows, and drive locally (*testimony*). His wife in June 2022 indicated the same limitations regarding concentration but also noted that the claimant plays video games, watches television, and does chores/tasks, all of which would require some ability to concentrate, persist, maintain pace (7E).

R. 27. The ALJ appears to be saying that Weeks's daily activities are inconsistent with his reported difficulties concentrating, persisting, and maintaining pace. But playing video games, watching television, driving locally, and doing household chores are not necessarily inconsistent with Weeks working at an extremely slow pace and needing frequent breaks to rest his brain. Although driving requires attention, Weeks testified that he limits himself to local driving because he can only pay attention for a short time. R. 69. As for video games, television, and chores, none of those activities require sustained concentration, nor do they require Weeks to work at a certain pace.

10

Second, in her discussion of Weeks's RFC, the ALJ wrote:

> Regarding the claimant's mental impairments associated with memory problems, concentration problems, and brain fatigue, they appear mostly attributable to his neurocognitive disorder resulting from a traumatic brain injury and post-concussive syndrome. Therefore, he is limited to simple instructions consistent with unskilled work; and he can maintain concentration, persistence, and pace sufficient to carry out simple tasks for two-hour intervals over an eight-hour day with customary scheduled breaks. The claimant's fair insight and ongoing somatic manifestations are indicative of his limitations for simple work-related decisions; and he can tolerate occasional changes in work setting.

R. 41. Here, the ALJ appears to credit at least some of Weeks's reported neurocognitive symptoms due to "somatic manifestations." But she provides no explanation as to why she did not credit the evidence about the severe limiting effects of these symptoms.

Third, the ALJ summarized Halsten's June 2019 opinion. The ALJ wrote that Halsten:

> thought the claimant's behavior during neurocognitive testing was most suggestive of emotional/psychological factors having an impact on his neurocognitive test performances; but it was likely that his symptoms were due to brain dysfunction (23F/70-77). Dr. Halsten thought it is possible that his symptoms have persisted due to the impact of ongoing psychosocial stress resulting in increased physiological arousal that exacerbates his somatic symptoms, thinking difficulties, and anxiety and frustration.

R. 44. The ALJ said that Halsten's opinion was "somewhat persuasive," but did not explain which portions she found persuasive or why. That's a problem, because Halsten found extreme deficits in Weeks's ability to concentrate and maintain pace during neuropsychological testing, and opined that Weeks had only a "guarded" prognosis for improving his level of functioning. R. 1206. If the ALJ credited that portion of Halsten's opinion, then it would make little sense

for her not to have included an RFC restriction to accommodate Weeks's slow pace and need for frequent breaks.

In his response brief, the commissioner asserts that "[c]ourts have repeatedly held that RFC assessments similar to the one imposed here accommodated a claimant's ability to maintain concentration, persistence, or pace." Dkt. 13, at 9. But in each of the cases that the commissioner cites, the ALJ explained why the medical evidence justified the RFC assessment, and the claimant did not identify any evidence that the ALJ did not consider that justified further restrictions.[3] Here, Weeks has pointed to evidence justifying further restrictions, and the ALJ's decision did not explain what she thought of that evidence. That lack of analysis precludes meaningful review, so the court will remand this case so that the commissioner can reevaluate Weeks's limitations in concentration, persistence, and pace.

## B.  Other issues

Weeks also challenges the ALJ's handling of his subjective symptoms and her rejection of portions of the medical opinion of examining physician Larry Studt. The ALJ's handling of Weeks's subjective symptoms suffers from the same articulation error as her analysis of Weeks's limitations in concentration, persistence, and pace. The ALJ said that Weeks's symptoms were inconsistent with his daily activities and the medical evidence. But as discussed above, the ALJ did not explained why Weeks's daily activities, including watching TV, playing

---

[3] *Mosing v. Kijakazi*, No. 20-cv-456-jdp, 2022 WL 909425, at *4 (W.D. Wis. Mar. 29, 2022) (simple, repetitive tasks restriction was consistent with the state-agency psychologists' opinions); *Gonzales v. Kijakazi*, No. 21-cv-645, 2022 WL 4533857, at *6 (E.D. Wis. Sept. 28, 2022) (two-hour increment restriction was consistent with medical records reporting adequate attention); *Kamin v. Kijakazi*, No. 21-cv-1139, 2023 WL 1879582, at *7 (E.D. Wis. Feb. 10, 2023) (two-hour increment restriction was adequate when claimant pointed to no evidence justifying additional restrictions); *Pufahl v. O'Malley*, No. 23-c-612, 2024 WL 770694, at *35 (E.D. Wis. Feb. 9, 2024) (same).

video games, and doing daily chores, were inconsistent with his reported symptoms. Nor did she engage with the medical evidence beyond providing a lengthy summary, so it not clear what inconsistencies she saw.

That leaves Studt's opinion. Studt is an occupational medicine physician who met with Weeks in February 2019 to provide a disability evaluation for his workers' compensation claim. R. 452–61. Studt did not examine Weeks directly (though he did observe him walk "quite slow[ly] into and out of the clinic); instead, his opinion was based on Weeks's subjective report and his examination of Weeks's medical records. Weeks argues that the ALJ impermissibly ignored Studt's opinions that Weeks could not perform fine manipulation, would need to alternate positions regularly while at work, and may need to lie down.

The court concludes that remand is warranted on this issue as well. The ALJ concluded that Studt's opinion about Weeks's physical symptoms was "partially persuasive with regard to some areas of difficulty, but not the degree of difficulty" and was "somewhat consistent with the overall record." R. 43. The ALJ said that Studt's view of Weeks's difficulties stooping, crawling, crouching, and kneeling was persuasive, but she didn't explain which other portions of the opinion she found persuasive and which portions she found unpersuasive. It's simply not clear what the ALJ thought about most of Studt's opinion, so she will have to revisit that opinion on remand.

ORDER

IT IS ORDERED that that the decision denying disability benefits to plaintiff Alan Weeks is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered Mach 27, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge